Letter of Appointment of Old M.A.F.O.O.S. and Others Against Lewis & Clark Community College District No. 536-409-0458. Counsel, please. Good morning. Thomas Kelty, occurring for the appellants. This is a case, my name is Thomas Kelty, did I say that? This case involves a fundamental examination of the scope of powers contemplated by the Illinois General Assembly and permitted under the constraints of Dillon's rule. The issue here is the extent of power granted to the junior college district in certain circumstances. The broad statutory interpretation suggested by Appellees is unsupported by law. Illinois statutes creating governmental bodies are rife with specific language, specific limitations, and specific authorizations of power, as is consistent with Dillon's rule. Absent such specificity, Illinois governmental bodies would enjoy virtually the same powers as a home rule unit, and this is simply not the law. While home rule powers granted by Article 7, Section 6 of the Constitution contain a broad grant of authority to adopt and implement measures relating to the government and affairs of municipalities, it at the same time reserves to the state certain enumerated powers, such as imposition of the authority to impose a local income tax. This is the converse of Dillon's rule, the Dillon's rule analysis, which allows enumerated statutory powers and prohibits all others. The non-specific agreement arrangement between the privately owned Tidal Wave Swim Team and the Defendant Community College is ultra-violent in the process that bright-lined limitations on defendants' statutory authority. Plans have standing to bring this suit by virtue of the fact that they are district taxpayers of a governmental unit where those funds are being spent by the district, directly or indirectly, for purposes which exceed its statutory authority. So are you arguing that any taxpayer has standing? In these circumstances, yes. It's an attack on the general fund. Do you have a case that you can cite that says that? Pardon me? Do you have a case that says that, that any taxpayer under these circumstances would have standing? Not in those words, but relying on Mallet v. City of Belleville, I believe that's what that case stands for, yeah. Could you articulate that a little further? It stands for what proposition? for that purpose. By comparison, Mallet involved a TIF development, I believe, and the issue there became whether or not the specific taxes coming from the TIF area were such that the property owners, the challenging property owners, had no standing because of the general revenue fund standard. And the Mallet court recognized that those people, even though they didn't own property within that district, that area, they had standing to challenge because of the effect of that upon the general revenues of the City of Belleville. I believe that's what the case stands for. Thank you. There's a distinct controversy between the parties, the existence of which is not denied by the defendant. The controversy is whether the ultra-virus powers being exercised by the district both exceed its statutory authority and collide with the rights of the plaintiff to operate their business without unauthorized tax-supported competition from the district. Dillon's rule, which is the standard against which all governmental powers are tested, is restrictive in scope, evidencing a presumption against the exercise of powers which are not enumerated and does not permit a carte blanche interpretation of vague language. The express words requirements under the rule are not to be interpreted as meaning the district can do whatever it likes based upon catch-all statutory language. Adopted by the only General Assembly. It is the obligation of the General Assembly to be precise in its choice of statutory language to protect governmental bodies from successful challenges to the scope of their powers. Mr. Kelty, let me ask you a question. The community college exists to offer a comprehensive community college program, and it's defined by the State Board as including public services. Under the Administrative Code, that means non-credit classes and other activities of an educational nature, such as the provision of college facilities and expertise to the community designed to be in service to the public. Wouldn't that include dance classes, fitness classes from lessons, dental services, massage therapy? No, Your Honor. Why not? The key words which you just said were educational nature and swimming by a group of youngsters on a YMCA team is not within the educational mandate of the community college. Well, we used to have mandatory PE classes when I went to college, high school. You were a student. These are not students. Well, they were offered. I took a cooking class. Under the auspices of the school. Of the university. As did other people in the community. They may have. And the people in the other community veiling themselves may not have been entitled to that. That's where the rubber meets the road in this case, Your Honor. Is it within the educational mandate of the junior college to do what they're proposing to do? If you throw out the educational mandate, and what you're saying is that this unit of government, this school district, this junior college, has virtually the same powers as a home rule unit because you're looking at a general grant of authority, if you will, from the General Assembly that is beyond what is permitted by the Constitution. You simply can't grant powers in Illinois. You can't exercise powers in Illinois granted by the General Assembly, which violate Dillon's rule. And one of those is it's essential. It's not convenient or incidental. It's one of the tests. But the prime test, Your Honor, is is it essential to the stated purposes of the college? And by analogy. Would the junior college district have authority to set up a county police force or a general police force to protect all of its students throughout the community? Would they have the authority to set up and operate a fire department that would service those who are students of the college? It can go on and on, Judge. There is some point. Is there a difference between the community colleges and the universities and their mandates? Honestly, Judge, I have not studied universities. Well, I just remember seeing the U of I was going to partner with the YMCA to have a facility. It didn't happen. And then Lincoln Land Community College has all sorts of classes for grade school kids and adults who are not students. They can go take cooking classes or Spanish classes or exercise classes. And you're saying this has just never been challenged before? I've never challenged it, Judge. And I don't believe the issue that that's fundamentally has ever been raised. But there are some circumstances, Judge, under the Oman Constitution where a unit of government and a private enterprise can enter into what's called an intergovernmental cooperation agreement. But the fundamental of that is that each party to that agreement has to have the ability to exercise the fundamental power, the fundamental activity. In this case, metro sports is not in the education business, and the junior college is not in the swimming team business. So you look at – and I didn't get into this, Judge, but I'm fairly familiar with those cases – that absent that match, even under intergovernmental cooperation, which is given a broad interpretation of the Oman Constitution, this particular arrangement just doesn't fly. Now, as to universities, I know they're treated differently under the law. They're more of a state agency, if you will, than the school district, the junior college district, or the city of Springfield. And I can't really have them explored that nuance, Judge. But I understand what happens every day. I understand historically what colleges and junior colleges and all sorts of units of government have done. But I suggest that to do so and to be valid, it has to be within its mandate. By comparison, would the city of Springfield open a junior college? Well, under its police power, general public health, safety, and welfare, one could argue that, sure, open a junior college. Because you're a homegrown municipality, for one, and it falls within the police power. No, that doesn't fly. Because the fundamental purpose, even with a city, which is a general purpose, its fundamental purpose is not education. It's fire and police and water and sewer and all those other things that we know that cities do for their populations. So, again, Judge, I think it comes back to the educational mandate. And even the public service, or the service to the public, it's characterized both ways by Appalachian, is still subject to a process by which the board, the state board, determines whether or not that particular activity meets the public service definition. And if it doesn't, you can't do it. Even in this case, it currently did not go through that process to even establish this contract or this so-called public service in a proper manner under their own rules and regulations. Defendant's statutory powers are limited to providing auxiliary services for students and employees. While the members of the Tidal Wave swim team are neither. An exclusive contract to the YMCA for use by its dues-paying members simply does not relate to services provided by the college to its students and employees. This simple fact is indisputable. The financial need of the college is likewise not a consideration in determining whether or not this particular arrangement is valid. As a basis for allowing an auxiliary enterprise comparable to a commercial enterprise, the college argues that this is a legitimate arrangement. There's no foundation for that claim. Such a conclusion fails to recognize the inherent educational limitation upon the activities of the college. And a 2619 dismissal based upon the introduction of affirmative matter is unsupported in this case. Under the standard review here, a de novo examination of the record by this court will disclose a genuine issue of material fact exists in this case. Once again, with regard to Dillon's rule and the argument of the district that it can do it because it can do it is simply circular and illogical. It does not constitute sound legal analysis. It's nothing more than the district saying, I can do it because I can do it. But that isn't the issue before the court. Counsel, before you conclude your remarks, assuming for sake of argument this court were to agree there is standing here, how do you get around the one-year statute of limitations? It's a continuing court. These students were swimmers for 6, 8, 10 years. They availed themselves of the services and metro sports. When you say continuing, did the complaint allege the length of the relationship between the district and the YMCA? Yes. How so? Is there allegation that there was a written agreement that was for 5 years or 10 years? No. Or an oral agreement where this was going to be done on an annual basis? An oral agreement, if you would. It's a continuing course of conduct, Judge. The allegations in the complaint are that this arrangement between the metro sports and the tidal waves swim team goes back many, many years. And the plaintiffs anticipated every year that they have for many, many years that come May 1st, all these swim team members would do what they've done year after year after year. And within a few days prior to that date, they were informed that, oh, they made a deal with the college and that's where they were going. Is that every year they did that or just this one time? Just this one time. And how does that help you on the limitations? Every day it goes on, Judge. My client loses money by virtue of a continuing action of the district that takes money out of its pocket and subsidizes the activities of the tidal wave swim team with public money. It's not something that just happened at one point. I don't know. You might be right. It could have been a one-year agreement and then maybe there subsequently was another one-year agreement. Maybe it's done on an annual basis. I'm just thinking that your allegations don't establish that there was an ongoing relationship. It was just a one-time agreement reached between the district and the YMCA.  I think a careful review of the complaint, Judge, you will find that the history of this relationship is adequately laid out to establish what I'm suggesting to the court. How am I doing on time? I kind of lost track. There's a flyer. The flyer will come on when you have it. Thank you. Defendant's anonymous use of public service and public purpose is misplaced. The determination of public service resting upon the regulations imposed in those, in the case of this district, are fundamental. While a public purpose can include a public service, the converse is not true. Service to the public, which is what's under the regulations that govern this district, may evolve into a public purpose once it is properly established as a public service authorized by the regulations. As I stated earlier, it simply has not happened. The revenue needs of the district simply do not serve as a basis for the college engaging in commercial competition with a private, for-profit business, again, unless that power is specifically granted by the Illinois General Assembly. Simply saying that private means public because the district needs revenue is simply not sufficient. Moreover, the fact that the public may be required to pay for use of the public property does not convert that private use to a justifiable use of such property. It may only be used for public purposes. To further submit this conclusion, it's fundamental that the public property, the public body, holds public property in trust for the public. Unless there is statutory authority that meets the Dillon's Rule test, such activities are ultra-virus of the authority granted to that governmental body. The district is a limited purpose entity which is authorized to exercise powers which are essential and indispensable to the educational mandate of the district. It's unlike a water district, a sewer district, or a municipality, as I stated to the court earlier. The district's assertion that plaintiff's suit is barred by the limitations of the Tort Immunity Act likewise fails critical analysis, and I've addressed that with the court. So in conclusion, I would ask this court that the ruling of the lower court be reversed, if defendant's disputed activities constitute an exercise of powers ultra-virus those granted to the defendant, defendant's Ipsy Dixit statements do not constitute evidence or have legal basis, defendant's revenue needs arguments are irrelevant to the statutory issues raised herein, defendant's activity as a limited purpose entity fails to meet the public purpose test, plaintiff's claim of violation of the Illinois Antitrust Act is not barred, plaintiff's claim is not barred by the limitations of the Tort Immunity Act, because the trial court views its discretion not allowing plaintiffs to further amend the claim. Thank you. Counsel, please. Good morning, Your Honors. May it please the court. My name is Jill Licca. I'm with the law firm of Cypress Shaw, and I represent the community college as well as the individual board members. Was jurisdiction established over the board members? There's a question about that, Your Honor. We did accept service on the board members for the purpose of filing this motion to dismiss. We're here on the dismissal of the first amended complaint. The original complaint did not include any counts against individual board members, and Mr. Kelty did not seek leave to file against new parties, so we've moved to dismiss on that basis as well as others. Is there anything in the complaint that indicates the length of the relationship between the district and the Y, whether the arrangement was renewed, and any other facts establishing an independent recurrence? No, Your Honor. There's an allegation that there was a one-time lease. It doesn't establish the length of the lease, and it does not indicate that it's either ongoing or that it has been renewed. And in light of that, we do believe that the one-year statute of limitations does apply, because even if this is a continuing situation, the ill effects continue, but the statute runs from the date that the lease was agreed upon. Did he ask for leave to amend? No. So getting into the crux then, I guess I will talk about it on a kind of a claim-by-claim basis, also trying to address some of the questions that the Court has asked here. Let me start out by saying, though, I think that there's a real question about the breadth of the complaint here. Mr. Kelty seems to take issue with any use of facilities or any kind of programs offered by the district absent those, perhaps, that lead to some type of a degree or some type of certification. And certainly a review of the Act indicates that that was not the intent of the legislature. Presumably, under Mr. Kelty's theory, community college buildings would sit empty and not be used by anyone unless they were specifically in use by the students, and that any of the programs the community college is now offering for the benefit of the general public, except for degree or certificate-seeking students, would be rendered not doable under Mr. Kelty's theory of the case. So basically, they're claiming that the college was operating beyond the scope of its statutory authority. Mr. Kelty's real beak here seems to be, though, the breadth of the statute itself, not what this community college is doing, because, as you have all noted, the actions at issue here are actions that are occurring across the state of Illinois at every community college in existence. In our view, because the statute allows these actions, the case is properly dismissed under Section 2615. Also, though, it would be appropriate to dismiss it under 2619, which is what Judge Londrigan did the second time. However, it's our view that you can dismiss it under either one of those counts, regardless of what the trial court did. Initially, a review of Section 343 is appropriate. It authorizes the Board to grant the use of its facilities, first of all, when not in use by the students for meetings. It also allows it to grant the use of its facilities for educational, recreational, and social interests under such provisions and controls as it see fit. And it also authorizes it to grant the use of its facilities for recreational, social, and civic activities. And you don't have to do anything to get approval? No. When we talk about programs, public service programs, that does require a discussion with the State Board. But the use of its facilities does not require approval from the State Board. So certainly, allowing the Y and its swim team such use, whether it's with a fee or without a fee, falls squarely within the allowance of the statute. As would, for example, the use of the auditorium by a school for its graduation, or the use of the banquet hall for a social or charitable organization to have an event. Those are all activities that fall squarely within the services allowed here. I seem to recollect that they allow debates between candidates there. Would that require approval? Debates between candidates would not require approval of the Community College Board. It would fall within the meetings, as the Board sees fit, provided it's not at a time when the students would otherwise be using it. Activities like allowing a grade school to hold a theater production there would fall within the scope of that. A question was asked earlier about the authority of universities versus community colleges. And certainly, their authority under State law is very similar. And I saw the same article about the Y, and I'm not so sure that it didn't happen, ultimately. I pulled an article the other day. Maybe it didn't, but certainly they were contemplating it. And there is a particular provision in the State Act under community colleges that allows it to partner with other entities to do a myriad of things. So the use of facilities falls squarely within the statute, as does the use or the providing of these programs. The community college is charged with providing a comprehensive community college program. This includes programs and classes and activities of a non-credit basis, of an educational nature, or that are designed to provide public service. Again, the grant is very broad. The Act also allows the district to raise revenues. And contrary to what Mr. Kelty says in his belief, it's not specifically limited to through tuition or just property taxes. And the rule is that if it's not limited by statute or constitution, then basically the district can do that. Now, Mr. Kelty cites Dillon's rule, saying that it somehow limits the district's authority here. On the contrary, I think Dillon's rule is really irrelevant here, because the allowance is on the specific face of the statute. I mean, it specifically says the college can do what it is doing. But even if it didn't, there are extra provisions in the Act that go above and beyond Dillon's rule that allow the college to act in areas not expressly granted for the maintenance, operation, and development of the college. Again, very, very broad language. So as we said earlier, I mean, the use of the facilities, the district doesn't have to get permission for. I mean, certainly there's no dispute that the use should be incidental to the educational purpose, even though it's not specifically contained in that provision. Mr. Kelty says that these uses are commercial in nature. But case law says that even if there is some private use, say they rented out the auditorium for a private theater production, again, as long as that private use and benefit doesn't override the public benefit, then there's nothing inappropriate about that. And in fact, it's envisioned, because that is yet another benefit to the community at large. And certainly community colleges are designed to benefit not only the students, but also the general public, as well as the community in the area, and even outside the area, because it allows for out-of-district students to attend at a different tuition rate. And certainly in the complaint here, there is no allegation that the private uses dominate these facilities. So in our view, then, there is no violation of the Act, and the complaint falls short, because you only take well-founded complaints as true, and here the Act specifically disputes what Mr. Kelty's conclusory pleading is. Now turning to the programs, and I don't think that we need to say too much about this, because he really focuses on the use of the pool by the Y, but he does challenge the use of programs. And each and every case, the programs that are being offered here are somehow tied to educational offerings to the students. Because, for example, he takes issue with the students providing massage services or dental services, but those are incidental to the programs to teach individuals about massage and dental services. How would they learn if people didn't come there for them to practice on? Otherwise, the programs are educational in nature, and I think it's very difficult to dispute that teaching a child to swim is not educational, or teaching an adult to dance is not educational, or having a trailblazer club is not somehow providing a public service. So regardless of what particular program you look at here, they are educational in nature, and the complaint falls short under 2615. What if, for example, the culinary arm decided to open a restaurant, or the, I know it's not called Home Ec anymore, but the Home Ec department decided to start selling designer clothing, and the restaurant in town came in and sued the clothing manufacturer? That's actually a very good question. I think to the extent that the students were making the food, and they were only having people come in to eat on a limited basis, such that the private use did not override the public service, then that could be permissible. I think the same is true if you had a... What if it was wildly successful? Pardon? What if it was wildly successful, either of these businesses, and they were making millions a year? Would that be the... Well, I think there is a point in time when it looks like if the private use is going to override the public service, the public benefit, the provision of educational services to the students, I think that there you have to perhaps draw the line. There were questions earlier, though, about the authority, and I think Mr. Kelty said, well, could the City of Springfield, or could the community college, I guess it was, open a county law enforcement service? No, but the City of Springfield and the community... The City of Springfield, for example, could have training services for its police officers, firefighters, electricians, which it currently does, and they could also contract with other municipalities to provide the same services for them. That wouldn't be prohibited, and I believe that there are provisions in the Community College Act for them to have security, and there may be new provisions that allow that security to be armed. So they then could also, I believe, provide educational training services for security. So, again, I think the issue that Mr. Kelty has is really with the breadth of the statute itself, but that's a beef with the legislature. That's not the beef with Lewis and Clark Community College. Now, turning to the standing issue, Mr. Kelty was granted leave to file a First Amendment complaint to try to get over the standing hurdle, because he told Judge Lonergan he could make a taxpayer case. So he came back and he asserted that his clients were taxpayers as well as competitors. Well, being a competitor doesn't provide you any kind of legal right to protection. I mean, there's no contract statute or anything that gives a competitor to the college any kind of legally protectable right or right capable of being affected here. So he asserted he was a taxpayer. But in order to make a taxpayer case, you have to challenge the expenditure of funds, arguing that it is somehow going to adversely impact your tax burden. You can't take issue with the use of a building, and particularly when his argument is it's bringing money into the college, so he can't make an argument that his tax status is somehow going to be adversely affected by it. And there are a number of cases that say that. And even assuming he could make a taxpayer case, then the damages that flow from that standing have to be taxpayer damages. They can't be competitor damages. So he claims he's a taxpayer, but his damages that are sought are a result of a loss of private business flowing from a personal interest. So there's a huge disconnect there. And as such, he has not made a case for standing, and the count should be dismissed under 2619. The equal protection claims also have fatal flaws. Counsel, it's not perfectly clear to me on what basis the trial court dismissed these four counts. Can you elaborate on that? Yes. Under the declaratory judgment count, Your Honor, the first time the complaint was dismissed under Section 2615, failure to state a claim. Then Mr. Kelty alleged that he could come back and make a taxpayer case. Basically, he could reassert standing and reallege the case as a taxpayer case. And so Judge Lundergan granted leave to appeal for that purpose, and then the second time dismissed that case under 2619. The equal protection count was dismissed the first time under 2615, but the second time under 2619. Again, I think he... Okay, I understand it was under 2619, but what specifically... Judge Lundergan did not specify, Your Honor. So we just know it was under 2615 or 2619, but we don't know the rationale. Correct. We did not get any... We didn't get any statutory section. We did not get any... Or is there anything... Yes, it would apply to all four counts. This Court could consider that the statute of limitations might be different as to what's alleged in the counts 3 and 4 as compared to counts 1 and 2. When you look at the face of the pleading, the only thing that has a specific timeline attached to it is the lease with the Y. And that date, I believe, is May 16th of 2009. And that basically, though, is the crux of the factual basis underlying all of the counts. So it appears that all of the counts would be appropriately dismissed as a result of the one-year statute in the Tort Immunity Act. Now... But doesn't the complaint allege that the defendants have caused plaintiff's damages in continuing financial loss? Yes, but the continuing loss does not trigger a new statute of limitations. You have to... It's a concrete act. That's the date from which the statute runs. What about the cases that he cites? Talk about ongoing... Washing away of driveways... But the washing away of the driveways case, there were two distinct acts. And one of them... And so they said it runs from the most recent act. And that was the most recent event. So there were two distinct acts there. That wasn't a continuing violation case. What about the property violation continued to and including the two-year limitations and the drainage district's continuing duty to inspect the property? I don't think... That case is... I don't recall the specifics of that case, Your Honor, but it's not... I do not believe it's applicable here. You've got the general rule of law is that you have to have... You have an act, and the statute flows from that act even if the violation is continued. Well, Rourke was... The plaintiff suffered continuous loss of crops due to the district's continual failure to repair or maintain its drainage system. How does that differ from the ongoing use of the property as a swimming club? Well, I believe... Well, I'm not sure, Your Honor. I can't answer that question because I don't remember that specific case. I apologize. If this is not ongoing, then could a cause of action accrue every year? If it's not ongoing, a new cause of action could accrue with, for example, a new lease. And a new act... I mean, there could have been a new statute here had there been an allegation in the complaint that there was a new lease for a defined term. Back to the equal protection count. Here, the plaintiff complains that the defendants have engaged in a tuition preference by allegedly denying equal protection of the law to... By charging students tuition and offering other facilities or services to the general public on another basis. And I would note that at one point in the complaint, he says that the services are being offered for free. And another place, he says that they're being offered at prices below Metro's prices. So I'm not sure exactly which allegation to respond to. But basically, I'll just say on it, he claims that they're being offered to non-students on another basis. But basically, in order to make a case here, Mr. Kelty has to prove that those distinctions, which are noted in the act itself, don't have some kind of rational basis. And he has not pled that there was unreasonable discrimination. He has not pled that there is no rational basis for it. And he hasn't even pled that he has standing here in that he falls in with one of the classes of individuals to bring this type of case. And as such, that count should be dismissed. The antitrust claims, I mean, there are a number of reasons for dismissing those. But first and foremost, the community college, the prevailing trend is to find community colleges to be units of local government. There was a DuPage case that said that. Your time is up. Okay, thank you. Your Honors, I think that it is very clear from our briefing. Your time is up now. Okay, thank you, Your Honor. Rebuttal, please. Thank you, Your Honor. The issue with regard to massage services, dental services, we don't dispute those. Those were brought up by Your Honor in a question. Those are legitimate education mandate-related activities of the college. That's part of the training for a degree of some sort in massage services. There wasn't a lease between these two parties, was there? Pardon me? There was not a lease. No, there was not. The only agreement was between the plaintiff and the sportsman. Is that correct? That's correct. Dental services, likewise, is a fundamental part of the dental school professional education at the college. The restaurant question, of course, you could have a restaurant activity. Again, if it's an exercise, it's a teaching exercise for the students. It is correct, Your Honor, that we're uncertain why Judge Leiderman dismissed this case. It was not specific. It was a case dismissed, 2619, with prejudice. Could you have asked him to do something else to show more what happened? No, I did not. I said, could you? Oh, could. Well, I think under 2619, when the court says, with prejudice, you're done. You go up on appeal. There are significant facts at issue, which are evident from the argument this morning, which should have been considered by the trial court, given the property opportunity. I'm sure both cases would have argued them vehemently. The question of price value is an allegation that the charge, whatever it may be, by the college district is below that of Metro Sports. If free, it's certainly below what Metro Sports would charge. Metro Sports is in the business to make a profit. The equal protection argument, the rational basis is not an issue to be proven by the plaintiffs. Rational basis is the burden shifts to the college district, in this case, to establish a rational basis when there's been a facial challenge of violation of equal protection. That burden simply was not met. And until it is, plaintiffs have no opportunity to overcome that proof, if you will, from the college, absent the opportunity to introduce evidence, which was not allowed here. So for all the reasons I set forth earlier, I believe this case should be reversed and remanded. Thank you. Thank you, counsel. The court will take the matter under advice.